UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DERRICK WILSON,

        Plaintiff,

        v.                              Case No. 20-C-699

CITY OF MILWAUKEE,
DIRECTOR OF WI DIVISION OF
COMMUNITY CORRECTIONS,
MILWAUKEE CHIEF OF POLICE,
MILWAUKEE COUNTY SHERIFF,
MICHAEL RUBLEE, STEPHANIE SEITZ,
FAWN SCHWANDT, STEVEN STRASSER,
RICHARD JACOBS, RODOLFO ALVARDO,
CHRISTOPHER SCHLACHTER, WILLIAM SHEEHAN,
ANNE PORTNOY, SGT. JOHN DOE,
MATTHEW GIBSON, and PHILIP MOSELEY,

        Defendants.

## SCREENING ORDER

Plaintiff Derrick Wilson, who is incarcerated, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging the defendants violated his constitutional rights. This order resolves Wilson's motion for leave without prepaying the filing fee, addresses his motion to pay the partial filing fee from his release account, and screens his complaint.

**A. Motion for Leave to Proceed without Prepaying the Filing Fee**

Wilson has requested leave to proceed without prepayment of the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Wilson filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his

complaint, as required under 28 U.S.C. § 1915(a)(2). On May 22, 2020, the court ordered Wilson to pay an initial partial filing fee of $19.96 by June 12, 2020. Wilson filed a motion to pay the initial partial filing fee out of his release account. Because the court's May 22 order explicitly allowed him to do so, the court finds Wilson's motion mooted. Wilson then paid the initial partial filing fee on June 8, 2020. Accordingly, Wilson's motion for leave to proceed without prepaying the filing fee will be granted, and he will have to pay the remainder of the filing fee over time as explained in this order.

## B. Screening the Complaint

### 1. Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), a court must dismiss a complaint if a plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To proceed under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations,

"however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 2. Plaintiff's Allegations

On June 14, 2017, an armed robbery occurred where two "disguised Black males enter room 215 of [the American Inn] Motel, both identically dressed in all black clothing; black low fitted ball caps, black shades, and beards" and then subsequently robbed the motel desk employee at gunpoint. Dkt. No. 1 at ¶ 16. On June 17, 2017, defendants Milwaukee Police Department officers Michael Rublee, Stephanie Seitz, and Fawn Schwandt stopped Wilson in front of his residence and requested that he accompany them to the police department in downtown Milwaukee. Wilson agreed but alleges that once they got downtown, Schwandt booked him and filed false charges of armed robbery and a probation violation. Wilson also alleges that Schwandt deliberately omitted key facts and used falsehoods to obtain a probation hold and when filling out a probable cause form. According to Wilson, a Sergeant that he identifies as "John Doe Sgt. 017989" signed off on the paperwork knowing she falsified information. Additionally, Wilson alleges such practices are part of "a much larger widespread practice and custom that routinely transpires within the City of Milwaukee." Dkt. No. 1 at ¶ 35.

During the investigation, Wilson contends that various defendants falsified information to frame him for the armed robbery. Defendant Richard Jacobs, the "latent print examiner," allegedly intentionally ruled out four of the five prints recovered from the crime scene and then falsely identified the fifth print as Wilson's. Defendant Detective Anne Portnoy purportedly contacted Wilson's probation agent, defendant Phillip Mosely, and told him that Wilson was guilty of an armed robbery. Wilson states this information then unduly influenced Mosely causing Mosely to positively identify Wilson in a photo of surveillance footage shown to Mosely by defendants

3

Detective William Sheehan and Officer Steven Strasser. Wilson states defendant Christopher Schlachter also used suggestive tactics with a photo of the surveillance footage to induce Wilson's mother to positively identify him as the suspect. Schlachter also did something similar with an old mug shot to induce a witness to positively identify him.

Defendants Schlachter and Detective Alvardo asked Wilson for permission to search his home. Wilson states he refused to give consent, so Schlachter and Alvardo went to his mother, who owns the home, and obtained written consent from her. When giving consent, Wilson's mother informed Schlachter and Alvardo that Wilson has a private bedroom in the basement that he pays $100.00 a month for in rent.

Wilson also alleges on several occasions he demanded an attorney but Schlachter informed him that he did not have a right to an attorney. Schlachter allegedly interrogated Wilson at least twice without an attorney present, despite Wilson's demands for one. He was also subjected to a "police lineup" on June 20, 2017 where Schlachter, Sheehan, and District Attorney Investigator Matt Gibson all forced him to participate and denied him an attorney, despite Wilson demanding one.

Wilson alleges that the City of Milwaukee and the John Does he identifies as the Sherriff of Milwaukee County, the Director of WI Division of Community Corrections, and the Police Chief of the Milwaukee Police Department all knew or should have known about the "widespread practices and customs" that result in detainments without probable cause based on false information. On this matter, Wilson seeks injunctive relief asking the court to require that written policies are adopted and training conducted to ensure that officers and employees do not violate any constitutional rights. He also seeks $75,000 in compensatory damages and $75,000 in punitive damages.

### 3. Analysis

The crux of Wilson's claims are that various members of the City of Milwaukee Police Department and related agencies framed him for the June 14 armed robbery using manufactured evidence. While ultimately these claims may be barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because they could potentially implicate Wilson's conviction, at this stage, he sufficiently alleges several constitutional claims. Where a police officer "knowingly, intentionally, or with reckless disregard for the truth, makes false statements" to effectuate a seizure of a person, and those false statements are essential in causing that seizure, a Fourth Amendment violation occurs. *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003). Wilson alleges that defendant Schwandt deliberately omitted information and lied to obtain a probation hold and on the probable cause forms she filled out. More specifically, the complaint alleges that even though there were two black men that were going in and out of Room 215 at the motel, Officer Schwandt's report said there was only one. Because Wilson's fingerprints were found in the room, the statement that only the robber was in the room arguably created the false impression from that fact alone that he was the robber. At the screening stage, this is sufficient to proceed on a Fourth Amendment claim against her.

He can also proceed on a claim against the John Doe Sergeant under a theory of supervisor liability. Supervisors can be held liable for constitutional violations caused by their employees where the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). Wilson alleges that the John Doe Sergeant knew of Schwandt's deception and signed off on her written statements on the probable cause forms and the written statements used to obtain the probation hold. However, Wilson's complaint lacks any allegations that the other arresting officers, Michael

5

Rublee and Stephanie Seitz, engaged in making false statements in support of his detainment, so he fails to state a claim against them. The court will dismiss them from the case. For Sgt. John Doe, after the named defendants answer Wilson's complaint and the court enters the scheduling order, Wilson may make discovery requests (written questions or requests for documents) on the named defendants in an effort to identify the real name of Sgt. John Doe. Once he knows the real name of Sgt. John Doe, he should file a motion asking the court to substitute the real name for the Doe placeholder.

Regarding the other defendants that allegedly falsified evidence during the investigation of the armed robbery, many of the allegations Wilson includes are conclusory statements that lack any specific factual support. While courts are to liberally construe *pro se* plaintiffs' complaints, courts cannot "accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Twombly*, 550 U.S. at 570. For example, Wilson has no factual basis for his allegations against the "latent print examiner" Richard Jacobs, Detective Anne Portnoy, the probation agent Phillip Mosely, or Officer Strasser, and so the court will dismiss them from the case. Wilson also cannot state a Fourth Amendment claim against Sheehan; however, Wilson has additional allegations against Sheehan that the court will address below.

Wilson also claims that Schlachter and Alvardo violated his constitutional rights when they searched the room he rented from his parents without his consent or a warrant. A warrantless or consent-less search of a residence violates the Fourth Amendment unless "voluntary consent [is] given by a person with authority." *U.S. v. Henderson*, 536 F.3d 776, 779 (7th Cir. 2008) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). This includes "third parties who have 'common authority or other sufficient relationship to the premises or effects sought to be inspected.'" *Id.* (quoting *U.S. v. Matlock*, 415 U.S. 164, 171 (1974)). While Wilson states that his

6

mother consented to the search of the home, he also alleges that she told Schlachter and Alvardo that Wilson rents the basement room from her and it is his private space, sufficiently contending that Schlachter and Alvardo did not have proper consent. Again, because this is only the screening stage, Wilson may proceed on an unreasonable search claim under the Fourth Amendment against Schlachter and Alvardo.

Additionally, Wilson alleges Schlachter interrogated Wilson without an attorney present despite Wilson demanding one on at least two occasions. If Wilson had been read his *Miranda* rights, such interrogations would violate the Fifth and Fourteenth Amendments. *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). While Wilson does not explicitly state that he had been read his rights, for the purposes of screening, the court will infer from context that he was and allow him to proceed on a Fifth and Fourteenth Amendment claim against Schlachter for interrogating Wilson without an attorney present.

Wilson further alleges that Schlachter, Sheehan, and Gibson forced him to participate in a lineup without an attorney present. This would violate Wilson's constitutional rights only if "adversary judicial criminal proceedings" had been initiated because only then does the Sixth Amendment right to counsel attach. *Beacham v. Annerino*, 82 F.3d 420, 1996 WL 175079, at *4 (7th Cir. 1996) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). Wilson alleges that he did not have his initial appearance until June 23, 2017, and his court records on the Wisconsin Circuit Court Access website (https://wcca.wicourts.gov) indicate that he was not charged until June 22, 2017. The lineup allegedly took place on June 20, 2017. As such, under *Kirby*, Wilson's Sixth Amendment right to counsel had not yet attached, so he cannot proceed on a Sixth Amendment Claim against Schlachter, Sheehan, and Gibson. Because Wilson fails to state any additional claims against Sheehan and Gibson, the court will dismiss them from this case.

7

Finally, Wilson brings claims against the City of Milwaukee and the John Does he identifies as the Sherriff of Milwaukee County, the Director of WI Division of Community Corrections, and the Police Chief of the Milwaukee Police Department. Regarding the City of Milwaukee, in order for a municipality to be liable for a plaintiff's constitutional violation, the plaintiff must allege that the violation was a result of a municipal policy or custom. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). This includes "governmental customs" that result in constitutional violations even though the "custom has not received formal approval through the body's official decision-making channels." *Id.* Wilson's assertion that the City of Milwaukee, the Chief of Police, the Milwaukee County Sheriff and the Director of the Division of Community Relations of the Wisconsin Department of Corrections have customs or practices of framing innocent individuals for crimes or otherwise violating their constitutional rights is entirely conclusory and unsupported by any plausible allegation of fact within his personal knowledge. The complaint thus fails to state a claim against any of these parties.

For the remaining three John Doe defendants, it appears Wilson names these defendants under both a theory of supervisor liability and in order to demand changes to policies and training procedures related to detainments that lack probable cause. Wilson may not proceed against these three defendants under a theory of supervisor liability because he does not allege that they knew of and turned a blind eye to the specific constitutional violations at issue in this case. *See Hildebrant,* 347 F.3d at 1039. Each of these John Doe defendants will therefore be dismissed.

Finally, Wilson seeks declaratory and injunctive relief against various defendants and the City. He fails to state a claim for such relief and these claims will therefore be dismissed as well, leaving only his claims for damages.

8

Case 1:20-cv-00699-WCG    Filed 07/10/20    Page 8 of 11    Document 8

### C. Conclusion

**THEREFORE, IT IS ORDERED** that Wilson's motion for leave to proceed without prepaying the filing fee (Dkt. No. 5) is **GRANTED.**

**IT IS FURTHER ORDERED** that Wilson's motion to pay the initial partial filing fee out of his release account (Dkt. No. 2) is **DENIED as moot.**

**IT IS FURTHER ORDERED** that the City of Milwaukee, Director of WI Division of Community Corrections, Milwaukee Chief of Police, Milwaukee County Sheriff, Michael Rublee, Stephanie Seitz, Steven Strasser, Richard Jacobs, William Sheehan, Anne Portnoy, Matthew Gibson, and Philip Mosely are **DISMISSED**.

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the complaint (Dkt No.1) and this order upon defendants **Fawn Schwandt, Rodolfo Alvardo, and Christopher Schlachter** pursuant to Federal Rule of Civil Procedure 4. Wilson is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Wilson information on how to remit payment. The court is not involved in collection of the fee.

**IT IS FURTHER ORDERED** that defendants **Fawn Schwandt, Rodolfo Alvardo, and Christopher Schlachter** shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the agency having custody of Wilson shall collect from his institution trust account the remaining $330.04 of the filing fee by collecting monthly payments

from Wilson's prison trust account in an amount equal to 20% of the preceding month's income credited to Wilson's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Wilson is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where plaintiff is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions. After the court enters the scheduling order, Wilson may make discovery requests (written questions or requests for documents) on the named defendants in an effort to identify the real name of Sgt. John Doe. Once he knows the real name of Sgt. John Doe, he should file a motion asking the court to substitute the real name for the Doe placeholder. Again, Wilson should not serve any discovery request upon the named defendants until *after* the court enters a scheduling order.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Eastern District of Wisconsin
125 S. Jefferson Street, Suite 102
Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Wilson is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Wilson is reminded that it is his responsibility to promptly notify the court if his is released from custody or transferred to a different institution. Wilson's failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Wilson may find useful in prosecuting his case.

Dated at Green Bay, Wisconsin this 10th day of July, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge